IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

COLUMBIA INSURANCE GROUP, INC.,      *
and COLUMBIA MUTUAL INSURANCE   *
COMPANY, INC.,                             *
                                          *
             Plaintiffs,        *
                                          *
vs.                                    *     No. 4:14CV00512 SWW
                                        *
CENARK PROJECT MANAGEMENT      *
SERVICES, INC., ET AL.,           *
                                        *
             Defendants.     *

**Opinion and Order**

      This declaratory judgment action arises out of an underlying state court breach of

contract and fraud action filed by Michael Collings, Janice Collings, Kim Collings, Debra

Collings, Kenneth Winberg, Marianne Winberg, Guy Collings, Catherine Collings, William

Miles, Kaye Miles, and George Collings (collectively "the Property Owners") against Arkansas

Infrastructure, Inc. ("AII"), David Barron, and Cenark Project Management Services, Inc.  The

dispute before this Court concerns whether the plaintiffs, Columbia Insurance Group, Inc. and

Columbia Mutual Insurance Company, Inc. ("Columbia"), have a duty to defend or indemnify

the defendants, AII and Barron, in the state court proceeding.  The Court has reviewed the

motions for summary judgment, the responses to those motions, and the replies to the responses.

The Court held a hearing on the motions on August 19, 2015.  For the reasons stated below, the

Court finds that the motion for summary judgment filed by AII and Barron should be granted to

the extent that Columbia has a duty to defend them.  For the reasons stated in the Certification

Order, the Court finds the motions of Columbia and the Property Owners should be denied.

I.

AII is an Arkansas corporation; Barron is AII's president and sole shareholder.[1]   The

Property Owners hired AII to construct earthwork pads for foundations for lakehouses they built

in Van Buren County, Arkansas.  Cenark Project Management Services, Inc. ("Cenark")

developed the engineering plans and specifications for the pads.[2]  On June 13, 2012, the Property

Owners filed a complaint in the Circuit Court of Van Buren County against AII, Barron, and

Cenark, styled *Michael Collings, et al. v. Arkansas Infrastructure, Inc. et al.* (hereinafter the

"underlying action").  The Property Owners allege that AII failed to construct the pads in

accordance with the engineering plans and specifications of Cenark and that Cenark failed to

provide oversight of the work performed by AII.[3]  They seek compensation for the money paid to

AII and Cenark pursuant to their contracts plus damages for the cost of the work that has been

done and will need to be done in the future to repair, replace, or correct the faulty work.  The

Property Owners allege they have sustained permanent loss of value of their property and the

structures built upon the property.

As a part of the contractual agreement with the Property Owners, AII agreed to obtain

Commercial General Liability (CGL) insurance to protect AII and the Property Owners "from

claims for damages . . . to property that may arise out of and during operations under this

---

[1]AII has been dissolved.

[2]Although a named defendant, Cenark Project Management Services, Inc. did not enter an appearance and is not a party to the case before this Court.

[3]Ex. A to Complaint [ ECF No. 1-1].

contract."[4]  Columbia issued a CGL Policy ("Policy") to AII and Barron for the policy period of September 23, 2005, through September 23, 2006, subject to the terms, conditions, and exclusions set forth in that policy.  The Policy was renewed in 2007, 2008, and 2009, with the last effective date of coverage being September 23, 2009.  The relevant terms, conditions, and exclusions of the Policy and each renewal policy are the same; thus, they are collectively referred to hereafter as the Policy.[5]

The Policy provides that Columbia will "pay those sums that [AII] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.'"[6] Coverage only applies if "'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' and occurs during the coverage period.[7]     The Policy defines "property damage" as "Physical injury to tangible property, including all resulting loss of use of that property" and "Loss of use of tangible property that is not physically injured."[8] Occurrence means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[9]

After they were served, AII and Barron tendered the complaint to Columbia to represent them.  On July 9, 2012, Columbia sent a letter to Attorney Jerry Lovelace, asking him to "defend and protect" AII and Barron.  By letter dated July 18, 2012, Columbia notified AII and Barron

---

[4]AII's and Barron's Statement of Material Facts, Ex. 1 to Ex. A.  ECF No. 61-1 at 12.

[5]Pls.' Rule 56.1(a) Statement of Undisputed Material Facts, ¶ 9.

[6]*Id*., Ex. D at 22 (ECF No. 49-4).

[7]*Id.*

[8]*Id*. at 36.

[9]*Id.* at 35.

that it had asked Lovelace to proceed with AII's defense.  Columbia acknowledged in the letter

that it is possible that damages could be awarded in excess of the policy limits.  Attorney

Lovelace filed an answer on AII's behalf, and discovery commenced.  Neither Columbia nor

Lovelace filed an answer on Barron's behalf.  Columbia did not advise Barron or AII of any

further defense to coverage under their policies prior to filing the declaratory judgment action in

this Court.  At the time Columbia filed this action, the parties in the underlying action had

exchanged written discovery and had conducted numerous depositions.[10]

On August 29, 2014, Columbia filed a Complaint for Declaratory Judgment, asserting:

27.  The "damages incurred by the [Property Owners] are alleged to have occurred due to a breach of contract by AII and/or Barron.  This breach of contract claim does not constitute "property damage" arising out of an "occurrence" as those terms are defined in the Policy and therefore no coverage is afforded under the Policy.

28.  With respect to the fraud claim asserted against AII and Barron, the Policy also includes what is commonly referred to as an "intentional acts exclusion," which provides, in relevant part:

**SECTION I - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected or Intended Injury**

"Bodily injury" or "property damage expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.[11]

AII and Barron filed a counterclaim, alleging Columbia breached the Policy by not

---

[10]Collings's liability expert was deposed in January 2015.  AII's and Barron's Statement of Undisputed Facts (ECF No. 55) at ¶¶ 2-10.

[11]Compl. at 6-7.

paying attorney's fees and costs incurred in defending the underlying action and seeking judgment in the amount of $62,017.71. In the alternative, AII and Barron seek a declaration that Columbia has a duty to defend them.

Columbia argues it is entitled to summary judgment on its claim for declaratory relief in the form of a declaration that it is not contractually bound to provide coverage or indemnity to AII and/or Barron nor is it contractually required to provide AII and/or Barron with a defense in the underlying action. AII and David Barron move for summary judgment on their counterclaim that Columbia breached its duty to defend. The Property Owners move for summary judgment on the issue of coverage by Columbia to AII and Barron, under the "Product-Completed Operations Hazard" Coverage of the Policy.

## II.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. V. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 240 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute that must be resolved at trial. *Id*. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

In addition, the evidence is not weighed and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

III.

In the underlying complaint, the Property Owners allege:

> Commencing on or about April, 2011, plaintiffs began to discover cracks and/or separation in the foundations, patios, and other structures in their homes that were constructed by them upon their respective lots.  As the cracks and separation continued and worsened, plaintiffs conducted an investigation and excavation of areas around and under their foundations, and discovered in March 2012, that:
>
> (I)     the fill material under the foundations was not of the quality and quantity specified in the engineer's plans and specifications;
> (ii)    that certain critical drains had not been installed in the foundation pads by AII during construction as required by the engineers' plans and specifications;
> (iii)   that gabion walls and buttress walls were not constructed in accordance with the engineer's plans and specifications; and
> (iv)    that other aspects of the engineers' plans and specifications were not followed by AII during development and construction of the foundation pads.[12]

The Property Owners allege that Barron admitted he did not follow such plans and specifications and drawings during the performance of the contract,[13] and they allege the actions of AII and/or Barron were intentional and fraudulent.[14]  The Property Owners claim they "have sustained damages in the loss of the contract price paid to AII and CENARK, plus additional damages for the cost of work required in the past and that will be required in the future to repair, replace or remediate the faulty work done by AII, and to prevent future movement of the foundation pads,

---

[12]Compl., Ex. A, at ¶ 24.

[13]*Id*. at ¶ 26.

[14]*Id*. at ¶ 28.

buttresses, gabion walls and structures constructed on them."[15]

1. Duty to Defend

As a general rule, the duty to defend is determined by comparing the allegations in the underlying complaint with the scope of coverage provided under the insurance policy. *See Murphy Oil USA, Inc. v. Unigard Security Ins. Co.*, 61 S.W.3d 807, 812-13 (Ark. 2001). Under Arkansas law, the duty to defend is broader than the duty to indemnify, and it arises when there is a *possibility* that the injury or damages may fall within the liability policy coverage. *Id.* In testing the pleadings to determine if they state a claim within the policy coverage, a court must resolve any doubt in favor of the insured. *Id.* at 814. Courts are not, however, required by the rules of contractual construction to stretch their imaginations to create coverage where none exists. *Pate v. U. S. Fid. & Guar. Co.*, 685 S.W.2d 530, 532 (Ark. 1985). An intent to exclude coverage in an insurance policy must be expressed in clear and unambiguous language, and the burden is upon the insurance company to present facts that come within the stated exclusion. *See Union Bankers Ins. Co. v. Nat'l Bank of Commerce*, 408 S.W.2d 898, 900 (Ark. 1966).

Citing *Unigard Security Ins. Co. v. Murphy Oil*, 962 S.W.2d 735 (Ark. 1988), Columbia argues that under Arkansas law, which the parties agree applies in this case, damages resulting from a breach of contract do not constitute "property damage" under a CGL policy. Columbia also argues coverage for the Property Owners's claims of breach of contract and fraud are excluded by the "intentional acts" exclusion. AII and Barron argue that the Policy provides coverage for consequential, or collateral damage, that is incurred to property that is not the work product of the insured. They also assert the allegations of fraud are insufficient to find coverage

---

[15]*Id.* at ¶ 36.

is excluded under the intentional acts exclusion.

The Policy provides:

**1.  Insuring Agreement**

**a.**  We will pay those sums the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.

.   .   .

**b.**  This insurance applies to . . . 'property damage' only if:

**(1)** The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'[16]

.   .   .

**SECTION V - DEFINITIONS**

**13.**  "Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[17]

.   .   .

**17.**  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the

---

[16]Compl., Ex. D at 22.

[17]"Accident" has been defined "as 'an event that takes place without one's foresight or expectation-an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected.'"  *U.S. Fidelity & Guar. Co. v. Continental Cas. Co.,* 120 S.W.3d 556, 563 (Ark.2003).

'occurrence' that caused it.[18]

Insurance contract language is to be given its common and ordinary meaning. *Green v. Farmers Ins. Co.*, 57 F.Supp.2d 729, 732 (W.D.Ark. 1999); *Guerin Contractors, Inc. v. Bituminous Cas. Corp.*, 636 S.W.2d 638, 639 (Ark. App. 1982). There is nothing in the insuring agreement phrase "legally obligated to pay as damages" that restricts the liability for which damages may be awarded to tort claims. As long as the damages sought fit within the Policy's definition of "property damage" caused by an "occurrence," there is an initial grant of coverage. The Court finds that under the common and ordinary meaning of the Policy's language, the complaint alleges facts which would possibly come within the coverage of the Policy.

Having determined there is a possibility of coverage, the Court examines whether any exclusion precludes coverage. *Deschner v. State Farm Mutual Auto. Ins. Co.*, 290 S.W.3d 6, 9 (Ark. 2008). Columbia argues that coverage is excluded by the "intentional acts" exclusion. The Property Owners allege AII and Barron purposefully deviated from the plans and specifications provided for in the contract knowing that the non-conforming components would be covered and thus actively attempted to conceal their failure to perform. As previously stated, the exclusion provides that insurance does not apply to "'property damage' expected or intended from the standpoint of the insured." There are no allegations that AII and Barron expected or intended that failure to construct the pads according to the specifications would result in property damage to the Property Owners's homes. Applying a strict interpretation of the exclusion and resolving all reasonable doubt in favor of AII and Barron who had no part in preparing the contract, *see Guerin,* 636 S.W.2d at 232, the Court cannot find as a matter of law that the

---

[18]*Id*. at 35-36.

intentional acts exclusion is applicable thereby negating Columbia's duty to defend.

In making its argument that it had no duty to defend or indemnify, Columbia did not invoke the "Contractual Liability" exclusion which provides no coverage for: "'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:  (1) That the insured would have in the absence of the contract or agreement . . .[19]  The Court finds this language ambiguous such that it would not operate to negate Columbia's duty to defend.

The Property Owners note language in the Policy that they claim may provide AII and Barron coverage.  Subsection j of the exclusions section excludes various types of property damage.  Subsection (6) of subsection j excludes "'Property damage' to: (6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." [20]  "Your work:" means: (1) Work or operations performed by you or on your behalf; and (2) materials, parts or equipment furnished in connection with such work or operations.""[21] The Policy goes on to state: "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'[22]  "Products-completed operations hazard" is defined as including "all . . . 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: . . . (2)

---

[19]Compl., Ex. 49-4 at 23.

[20]*Id*. at 25.

[21]*Id*. at 37.

[22]*Id*. at 26.

Work that has not yet been completed or abandoned. . . . [23] This "Products-Completed

Operations Hazard' definition, the Property Owners argue, is a description of coverage that

would encompass the allegations they make in support of their complaint against AII and Barron.

In response, Columbia repeats its argument that there is no coverage under a CGL policy for

damages based on breach of contract.

Apparently, Columbia thought it owed a duty to defend as it undertook AII's defense

upon notification of the underlying action and continued representing AII through the

completion of discovery.  Because the insuring agreement makes no distinction between the

form of the pleading, the Court finds Columbia's argument that there is no coverage for a breach

of contract action unpersuasive.  Further, the facts asserted in the complaint do not establish

AII's and Barron's conduct comes within the intentional acts exclusion, and the contractual

liability exclusion is ambiguous as to the contracts to which it applies.  The Court finds the

underlying action alleges facts that raise the possibility that the claimed damages may fall within

the Policy's coverage.  For this reason, the motion filed by AII and Barron is granted to the

extent that the Court determines Columbia has a duty to defend them.

2.  Questions of Coverage

Columbia vigorously argues that the Policy as a matter of law does not cover the

damages alleged because they arise from a claim for breach of contract and, as such, the property

damages cannot meet the definition of an "occurrence."  For the reasons stated in the

Certification Order filed on this date, the Court denies the motions for summary judgment filed

by Columbia and the Property Owners.

---

[23]*Id*. at 36.

IV.

IT IS THEREFORE ORDERED that the motion for summary judgment filed by AII and Barron [ECF No. 54] is granted.   Columbia has a duty to defend.  The motions for summary judgment filed by Columbia [ECF No. 47] and the Property Owners [ECF No. 57] are denied without prejudice.

DATED this 23rd day of September, 2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE