IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

COLUMBIA INSURANCE GROUP, INC.,   *
and COLUMBIA MUTUAL INSURANCE   *
COMPANY, INC.,   *
   *
              Plaintiffs,   *
   *
vs.   *   No. 4:14CV00512 SWW
   *
CENARK PROJECT MANAGEMENT   *
SERVICES, INC., ET AL.,   *
   *
   *
              Defendants.   *

**CERTIFICATION ORDER**

Now on this 23rd day of September, 2015, pursuant to Rule 6-8 of the Rules of the

Supreme Court of the State of Arkansas, this Court certifies to the Supreme Court of Arkansas

two questions of law that may be determinative of this case and as to which it appears there is no

controlling precedent in the decisions of the Supreme Court of Arkansas.

**I.**

**QUESTIONS OF LAW TO BE ANSWERED**

Under the commercial general liability policy issued by Columbia Insurance Group, Inc.

and Columbia Mutual Insurance Company, Inc. to Arkansas Infrastructure, Inc. and David

Barron ("AII"),

1) Whether faulty workmanship resulting in property damage to the work or work

product of a third party (as opposed to the work or work product of the insured) constitutes an

"occurrence."

2) If such faulty workmanship constitutes an "occurrence," and an action is brought  in

contract for property damage to the work or work product of a third person, does any exclusion in the policy bar coverage for this property damage?

## II.

### UNDISPUTED FACTS RELEVANT TO THE QUESTION

Columbia Insurance Group, Inc. and Columbia Mutual Insurance Company, Inc., issued a Commercial General Liability Insurance Policy, No. CGSAR 12795, ("the Policy") to separate defendants Arkansas Infrastructure, Inc. ("AII") and David Barron, for the policy period of September 23, 2005, through September 23, 2006, subject to the terms, conditions and exclusions set forth in that policy. The Policy was renewed thereafter in 2007, 2008, and 2009, with the last effective date of coverage being September 23, 2009. The relevant terms, conditions and exclusions of the Policy and each renewal policy are the same, thus collectively referred to hereafter as the Policy.[1]

AII and Barron obtained the Policy as a condition of a contract AII entered into with separate defendants Michael and Janice Collings, Kim and Debra Collings, Kenneth and Marianne Winberg, Guy and Catherine Collings, Williams and Kaye Miles, and K George Collings (collectively, "the Property Owners") on October 28, 2005. Under the contract, AII was to construct buildings pads for six residences that were to be constructed on lots owned by the Property Owners. AII agreed to perform the work in accordance with plans and specifications that had been prepared by CENARK Project Management, Inc. ("CENARK"). CENARK had a separate agreement with the Property Owners to oversee AII's work in

---

[1]The Clerk is directed to attach to this Certification Order a copy of the Policy. The Policy is Exhibit D to Columbia's Rule 56.1(a) Statement of Undisputed Material Facts (ECF No. 49-4).

constructing the building pads.

On June 13, 2012, the Property Owners filed a complaint in the Circuit Court of Van

Buren County against separate defendants AII and David Barron, styled *Michael Collings, et al.*

*v. Arkansas Infrastructure, Inc, et al.*, Van Buren Co. Circuit Court No. CV-2012-120.

The complaint alleges:

Commencing on or about April, 2011, plaintiffs began to discover cracks and/or
separation in the foundations, patios, and other structures in their homes that were
constructed by them upon their respective lots.  As the cracks and separation
continued and worsened, plaintiffs conducted an investigation and excavation of
areas around and under their foundations, and discovered in March 2012, that:

    (I)    the fill material under the foundations was not of the
            quality and quantity specified in the engineer's plans and
            specifications;

    (ii)    that certain critical drains had not been installed in the
            foundation pads by AII during construction as required by
            the engineers' plans and specifications;

    (iii)    that gabion walls and buttress walls were not constructed in
            accordance with the engineer's plans and specification; and

    (iv)    that other aspects of the engineers' plans and specifications
            were not followed by AII during development and
            construction of the foundation pads.

Compl., Ex. A at ¶ 24.  The Property Owners allege that Barron admitted he did not follow such

plans and specifications and drawings during the performance of the contract, and they allege the

actions of AII and/or Barron were intentional and fraudulent.  The Property Owners claim they

"have sustained damages in the loss of the contract price paid to AII and CENARK, plus

additional damages for the cost of work required in the past and that will be required in the

future to repair, replace or remediate the faulty work done by AII, and to prevent future

movement of the foundation pads, buttresses, gabion walls and structures constructed on them."

*Id*. at ¶¶ 26, 28, & 36.

3

Columbia defended AII through discovery but then filed a declaratory action in federal court, seeking a declaration that it has no duty to defend AII and/or Barron and no duty to indemnify them.

The Policy provides:

**1.  Insuring Agreement**

**a.**  We will pay those sums the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.

.   .   .

**b.**  This insurance applies to . . . 'property damage' only if:

**(1)** The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'

.   .   .

**SECTION V - DEFINITIONS**

**13.**  "Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

.   .   .

**17.**  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

**III.**

**THE PROCEDURAL HISTORY OF THIS CASE**

4

On August 29, 2014, Columbia brought this action seeking a declaratory judgment stating that it owes no defense and has no obligation to provide coverage to AII and David Barron.  On May 8, 2015, Columbia filed a motion for summary judgment, arguing that the insuring clause and other relevant provisions of the Policy show that the Policy provides no coverage for the kinds of claims asserted by the Collings against AII and Barron.  On May 13, 2015, AII and Barron filed a motion for summary judgment on their counterclaim that Columbia breached its obligation under the Policy to defend them.  On May 14, 2015, the Property Owners filed a motion for summary judgment arguing that AII and Barron have coverage under the Products-Completed Operation coverage of the Policy.  The parties filed responses to the motions and replies to the responses, and the Court held a hearing on August 19, 2015.  On September 23, 2015, the Court found Columbia owed AII and Barron a duty to defend.  The Court denied the motions for summary judgment filed by Columbia and the Collings.[2]

## IV.

### THE ISSUES IN THIS CASE AND WHY
### THE ARKANSAS SUPREME COURT SHOULD DECIDE THEM

Columbia argues that because the Property Owners seek damages based on breach of contract[3], there is no coverage under the Policy because damages resulting from a breach of contract cannot arise from an "occurrence."  In support of its argument, Columbia cites *Unigard Security Ins. Co. v. Murphy Oil*, 962 S.W.2d 735 (Ark. 1998), which involved whether a judgment entered against Murphy Oil by an Alabama court was covered under the general

---

[2]The Clerk of the Court is directed to attach to this Certification Order a copy of the Opinion and Order which is dated this same date.

[3]The statute of limitations for a claim of negligence expired.

liability policy issued by Unigard.  Murphy Oil entered into a lease in 1961 of an island in

Alabama for the purpose of operating a petroleum storage facility.  The lease provided that at the

expiration of the lease Murphy "'quit and surrender the premises hereby demised in as good state

and condition as reasonable use thereof will permit.'" *Unigard*, 962 S.W.2d at 737.  Several

spills and leaks occurred over the years of the lease, and after learning upon the expiration of the

lease that the land was contaminated with petroleum products, the owner of the island sued

Murphy in 1990 and obtained a judgment in Alabama on its action for breach of lease and

trespass.  The jury found that the trespass had been accompanied by "malice, fraud, or

oppression" and awarded $4.6 million in punitive damages. *Id*. at 738.  Murphy Oil

subsequently sought coverage for the judgment under its general liability policy issued by

Unigard.  The key question was whether the damage award against Murphy Oil could be

considered "sums" that Murphy Oil became legally obligated to pay due to property damage

resulting from an "occurrence." *Id.* at  740. The term "occurrence" in the policies at issue in

*Unigard* was defined "as an accidental event."  The Arkansas Supreme Court denied Murphy

Oil's coverage claim, holding that the basis of the damage award resulted not from property

damage but from Murphy Oil's failure to perform contractual obligations. *Id.*  AII and Barron

argue that the *Unigard* case is distinguishable because in the case before this Court the allegation

is that faulty workmanship caused property damage to something other than the insured's work

product.

    In *Essex Ins. Co. v. Holder*, 261 S.W.3d 456 (Ark. 2007), the Baumgartners contracted

with a contractor to build their new home.  Before it was completed, the Baumgartners sued the

contractor seeking damages for breach of contract, breach of warranties, and negligence.  When

the contractor's insurance company refused to defend or pay any judgment that might be entered, the contractor brought a declaratory judgment action in federal court.  The federal court certified the following question to the Arkansas Supreme Court: "Does defective construction or workmanship, including failure to complete work, delays in construction or failure to procure qualified subcontractors, constitute an accident and, therefore, an occurrence within the meaning of commercial general liability insurance policies?" *Essex*, 261 S.W.3d at 456.  The Arkansas Supreme Court said that under the terms of the policies at issue, "[f]aulty workmanship is not an accident; instead it is a foreseeable occurrence, and performance bonds exist in the marketplace to insure the contractor against claims for the cost of repair or replacement of faulty work." *Id*. at 460.  The Arkansas Supreme Court also held "that defective workmanship standing alone - resulting in damages only to the work product itself - is not an occurrence under a CGL policy such as the one at issue here." *Id*.  The court referred to *Nabholz Construction Corp. v. St. Paul Fire & Marine Ins. Co.*, 354 F.Supp.2d 917 (E.D.Ark. 2005), where a contractor was sued for deficiencies in a subcontractor's work.  The federal district court, citing *Unigard Security Ins. Comp. v. Murphy*, *supra*, found : [T]he fact that 'property damage' occurred does not alone resolve the issue of whether it was caused by an 'event' for which the Policy provides coverage. . . . The Court agrees that a contractor's obligation to repair or replace its subcontractor's defective workmanship should not be deemed 'unexpected' on the part of the contractor, and therefore, fails to constitute an 'event' for which coverage exists." *Nabholz*, 354 F.Supp.2d at 921.  The court went on to find that the insured "may not recover the 'economic damages' incurred in connection with its subcontractor's construction of a faulty roof, which resulted in a foreseeable breach of contract.  This is not a qualifying event which triggers coverage for the

resulting 'property damage.'  This would include the cost of removing and replacing the improperly installed roof.  [The insured] may, however, recover for any resulting property damage which resulted because the roof leaked, such as water stained ceiling tiles."  *Id*. at 923.

In *Lexicon, Inc. v. Ace American Ins. Co.*, 634 F.3d 423 (8th Cir. 2011), the insured built a number of silos, one of which collapsed because of faulty welding by the insured's contractor, Lexicon, Inc.  After Lexicon spent millions of dollars to clean up the site, rebuild the silo, and replace damaged raw material, it sued the insurers who denied coverage.  The Eighth Circuit, relying on *Essex v. Holder*, held: "Properly understood, *Holder* justifies the Insurer's decision to deny Lexicon's claims for coverage for damage to 'the work product itself' - the silo."  *Lexicon*, 634 F.3d at 427.  However, "[a]bsent some applicable exclusion in the policies or other defense, the Insurers are obligated to reimburse Lexicon for all property damage other than to the silo itself, including the lost DRI [the raw materials] and damage to the nearby equipment."  *Id*.

Unlike *Holder*, the case before this Court does not involve faulty work by a subcontractor.  Unlike *Holder*, the work here was completed and there is collateral property damage, akin to the collateral property damage that the *Lexicon* court held would be covered absent an applicable exclusion.  The case before this Court involves damages to the structures that were constructed on and around the building pads.

Columbia argues the principle announced in *Holder* and interpreted in *Lexicon* do not control the case before this Court because the only causes of action supporting an award of damages are based on intentional conduct in the form of breach of contract and fraud.  A number of courts around the country are revisiting the general tenet that property damage sought under a breach of contract action cannot meet the definition of occurrence under the modern version of

the general commercial liability policy.

In *American Family Mut. Ins. Co. v. American Girl, Inc*., 673 N.W.2d 65 (Wis. 2004), American Girl contracted for the construction of a large warehouse.  After the building was substantially completed, it started to settle and continued to do so.  The insured general contractor contacted its insurer, American Family Mutual Insurance Company ("American Family"), which first concluded there was coverage and indemnified the insured for remediation services that had been performed up to that point.   When further remediation alternatives were estimated to cost between four and six million dollars, the general contractor hired engineers who determined that the soil engineer was negligent in his work and his faulty advice was a substantial factor in causing the settlement of the building, which ended up being demolished.

American Family sought a declaratory judgment regarding coverage under the CGL and excess policies it had issued to the general contractor, arguing the policies did not cover liability to the building owner for soil settlement as a result of the subcontractor's negligence.  In response to the insurer's contention that a loss giving rise to a breach of contract or warranty claim cannot constitute "property damage" within the meaning of the CGL, the Wisconsin Supreme Court said:

> To the extent that American Family is arguing categorically that a loss giving rise to a breach of contract or warranty claim can *never* constitute 'property damage' within the meaning of the CGL's coverage grant, we disagree.  'The language of the CGL policy and the purpose of the CGL insuring agreement will provide coverage for claims sounding in part breach-of-contract/breach-of-warranty under some circumstances.'  2 Stempel, *supra*, § 14A.02[d], 14A-10.  This is such a circumstance.

*American Girl*, 673 N.W.2d at 75.

 As to whether the property damage was a result of an occurrence, the Wisconsin court

9

held:

> American Family argues that because Pleasant's claim is for breach of contract/breach of warranty it cannot be an 'occurrence,' because the CGL is not intended to cover contract claims arising out of the insured's defective work or product.  We agree that CGL policies generally do not cover contract claims arising out of the insured's defective work or product, but this is by operation of the CGL's business risk exclusions, not because a loss actionable only in contract can never be the result of an 'occurrence' within the meaning of the CGL's initial grant of coverage.  This distinction is sometimes overlooked, and has resulted in some regrettably overbroad generalizations about CGL policies in our case law.

> .   .   .

> [T]here is nothing in the basic coverage language of the current CGL policy to support any definitive tort/contract line of demarcation for purposes of determining whether a loss is covered by the CGL's initial grant of coverage.  'Occurrence' is not defined by reference to the legal category of the claim.  The term 'tort' does not appear in the CGL policy.

*Id* at 76, 77.

The court went on to note that if losses actionable in contract are never "occurrences" for purposes of initial grant of coverage, then a CGL policy's series of "business risk" exclusions would not be necessary.  The Wisconsin Court said:

> If, as American Family contends, losses actionable in contract are never CGL 'occurrences' for purposes of the initial coverage grant, then the business risk exclusions are entirely unnecessary.  The business risk exclusions eliminate coverage for liability for property damage to the insured's own work or product - liability that is typically actionable between the parties pursuant to the terms of their contract, not in tort.  If the insuring agreement never confers coverage for this type of liability as an original definitional matter, then there is no need to specifically exclude it.  Why would the insurance industry exclude damage to the insured's own work or product if the damage could never be considered to have arisen from an covered 'occurrence' in the first place?

*Id* at 78.

In *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex.  2007), the court noted: "Contrary to the carrier's contention, the CGL policy makes no distinction between

tort and contract damages. The insuring agreement does not mention torts, contracts, or economic losses; nor do these terms appear in the definitions of 'property damage' or 'occurrence.' The CGL's insuring agreement simply asks whether 'property damage' has been caused by an 'occurrence.'  Therefore, any preconceived notion that a CGL policy is only for tort liability must yield to the policy's actual language." *See also Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 137 P.3d 486, 494-5 (Kan. 2006) (definition of "occurrence" in policy at issue does not distinguish between "tort" or "contract" claims; obligation to make such distinction is the drafter of the policy); *Hotel Des Artistes, Inc. v. General Accident Ins. Co. of America*, 775 N.Y.S.2d 262, 268  (N.Y. App. Div.2004)("nowhere in the policy's coverage provisions are there any restrictions on the source or theory of the insured's legal liability.")

The Court finds that the facts of this case present undecided questions of Arkansas law that may be determinative of this case.[4]

## V.

## REFORMULATION OF THE QUESTION

The United States District Court hereby acknowledges that the Arkansas Supreme Court, acting as the receiving court, may reformulate the questions presented.

## VI.

---

[4]Columbia references a number of federal district court opinions that relied on the *Unigard* case to deny coverage in commercial general liability policies where the underlying action was based on breach of contract.  *See Riceland Foods, Inc. v. Liberty Mut. Ins. Co.*, No. 4:10cv00091 SWW, 2011 WL 2262932 (E.D. Ark. June 8, 2011)(CGL policy does not provide coverage for breach of contract claim that insured delivered contaminated rice) and *Mid-Continent Cas. Co. v. Sullivan*, Nos. 4:07cv01154 JMM and 4:07cv01155, 2008 WL 5412835 (E.D.Ark. Dec. 23, 2008) (no claim of injury to persons or plants themselves in breach of contract claim for poor workmanship in spreading fertilizer on crops. Economic damages for lack of production not covered under the policy). In these cases, there was no allegation that the insured suffered any property damage outside of what it had contracted to provide.

## COUNSEL OF RECORD AND PARTIES

The attorneys of record in the case pending before this Court are as follows:

Attorneys for the plaintiffs, Columbia Insurance Group Inc. and Columbia Mutual

Insurance Company Inc.:

| | |
|---|---|
| Nathan Andrew Read | Paul D. Waddell |
| Waddell Cole & Jones, P.A. | Waddell Cole & Jones, P.A. |
| Post Office Box 1700 | Post Office Box 1700 |
| Jonesboro, Arkansas 72201 | Jonesboro, Arkansas 72201 |
| (870) 336-82228 | (870) 931-1700 |

Attorney for the defendants Arkansas Infrastructure Inc., and David Barron:

M. Edward Morgan
Morgan Law Firm, P.A.
148 Court Street
Clinton, Arkansas 72031
(501) 745-4044

Attorney for defendants, Michael Collings, Janice Collings, Kim Collings, Debra

Collings, Kenneth Winberg, Marianne Winberg, Guy Collings, Catherine Collings, William

Miles, Kaye Miles, and K George Collings:

Richard H. Mays
Richard Mays Law Firm, PLLC
115 South Third Street
Heber Springs, Arkansas 72543
(501) 362-0055

This Court orders that the plaintiffs be assessed one-half of the certification costs and the

defendants collectively be assessed one-half of the costs.

## VII.

The Clerk of the Court is hereby directed to forward this Certification Order to the

Supreme Court of the State of Arkansas under his official seal.

12

IT IS SO ORDERED this 23rd day of September, 2015.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE