IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

COLUMBIA INSURANCE GROUP, INC.,   \*
and COLUMBIA MUTUAL INSURANCE   \*
COMPANY, INC.,   \*
   \*
       Plaintiffs,   \*
   \*
vs.   \*   No. 4:14CV00512 SWW
   \*
ARKANSAS INFRASTRUCTURE, INC.,   \*
CENARK PROJECT MANAGEMENT   \*
SERVICES, INC., DAVID BARRON,   \*
MICHAEL COLLINGS, JANICE COLLINGS, \*
KIM COLLINGS, DEBRA COLLINGS,   \*
KENNETH WINBERG, MARIANNE   \*
WINBERG, GUY COLLINGS, CATHERINE \*
COLLINGS, WILLIAM MILES, KAYE   \*
MILES, and K. GEORGE COLLINGS,   \*
   \*
   \*
       Defendants.   \*

**Opinion and Order**

Before the Court is a renewed motion for summary judgment and motion to revise

previous opinion and order filed by plaintiffs Columbia Insurance Group, Inc. and Columbia

Mutual Insurance Company, Inc. ("Columbia").  Separate defendant Arkansas Infrastructure,

Inc. ("AII)") and David Barron ("Barron") filed a response to the motions and Columbia filed a

reply to the response.  Separate defendants Michael and Janice Collings, Kim and Debra

Collings, Kenneth and Marianne Winberg, Guy and Catherine Collings, William and Kaye

Miles, and K. George Collings (collectively, the "Property Owners") filed a response to the

renewed motion for summary judgment, and Columbia filed a reply to their response.  The

matter is ripe for determination.

**Background**

On June 13, 2012, the Property Owners filed a complaint in state court against AII and Barron, alleging claims of breach of contract and fraud in connection with the construction of foundational earthwork pads for houses they intended to build in Van Buren County, Arkansas. The Property Owners allege:

> Commencing on or about April, 2011, plaintiffs began to discover cracks and/or separation in the foundations, patios, and other structures in their homes that were constructed by them upon their respective lots.  As the cracks and separation continued and worsened, plaintiffs conducted an investigation and excavation of areas around and under their foundations, and discovered in March 2012, that:
>
> (I)    the fill material under the foundations was not of the quality and quantity specified in the engineer's plans and specifications;
>
> (ii)   that certain critical drains had not been installed in the foundation pads by AII during construction as required by the engineers' plans and specifications;
>
> (iii)  that gabion walls and buttress walls were not constructed in accordance with the engineer's plans and specification; and
>
> (iv)   that other aspects of the engineers' plans and specifications were not followed by AII during development and construction of the foundation pads.[1]

They allege:

> When confronted by a representative of the plaintiffs concerning the failure of AII to perform its work in accordance with the engineer's plans and specifications, David Barron, president of AII, admitted that AII had failed to follow such plans, specifications and drawings during the performance of his contract; and admitted that the foundation pads, drainage systems, buttresses and gabion walls had not be constructed correctly.

> The construction of the foundation pad, drainage systems, buttresses and gabion walls require engineering and construction expertise beyond the knowledge of the plaintiffs, thereby causing plaintiffs to hire CENARK to design and oversee those components of the project, and to hire AII to construct them.  Further, the failure of AII to follow the engineer's plans, specifications and drawings in the construction of the project was hidden from observation of the plaintiffs or any

---

[1]Pls.' Rule 56.1(a) Statement of Undisputed Facts, Ex. C, ¶ 24.

other person in that such components were covered by the foundations, fill dirt
and soils on the site.

In the failure to follow engineer's plans, specifications and drawings in the
construction of the foundation pad, drainage systems, buttresses and gabion walls,
knowing that such components would be covered by foundations, fill dirt and
soils, AII actively attempted to conceal its failure to follow such plans and
specifications, and committed fraud upon the plaintiffs.[2]

Columbia issued a Commercial General Liability Insurance Policy No. GCGSAR12795

("Policy") to AII and Barron for the policy period of September 23, 2005, through September 23,

2006, subject to the terms, conditions, and exclusions set forth in that Policy.  The Policy was

renewed in 2007, 2008, and 2009, with the last effective date of coverage being September 23,

2009.

Regarding Columbia's duty to defend and indemnify, the Policy provides:

**SECTION I - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**      **Insuring Agreement**

          **a.**      We will pay those sums the insured becomes legally
obligated to pay as damages because of . . .
'property damage' to which this insurance applies.
We will have the right and duty to defend the
insured against any 'suit' seeking those damages.

          **b.**      This insurance applies to 'bodily injury' and
'property damage' only if:

              **(1)**      The 'bodily injury' or 'property
damage' is caused by an
'occurrence' that takes place in the
'coverage territory.'

* * *

**SECTION V - DEFINITIONS**

---

[2]*Id.*, ¶¶  26-28.

**13.**   'Occurrence' means an accident, including the continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**17.**   'Property damage' means:
   a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b.   loss of use of tangible property that is not physically injury.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.[3]

Columbia undertook the defense of AII in the underlying action and two years later, on August 29, 2014, filed the declaratory action before this Court.  On May 8, 2015, Columbia filed a motion for summary judgment, arguing it owed no defense or coverage under the Policy based on the allegations of the complaint.  AII and Barron filed a motion for summary judgment on May 13, 2015, on their counterclaim that Columbia breached its duty to defend them.  The Property Owners filed a motion for summary judgment on May 14, 2015, arguing there is coverage under the Columbia Policy.  By Order dated September 23, 2015, the Court found Columbia had a duty to defend AII and Barron.[4]  The Court denied without prejudice the motions for summary judgment filed by Columbia and the Property Owners as to the issue of coverage and certified two questions of law to the Arkansas Supreme Court: (1) "Whether faulty workmanship resulting in property damage to the work or work product of a third party (as opposed to the work or work product of the insured) constitutes an 'occurrence;'" and (2) "If such faulty workmanship constitutes am 'occurrence,' and an action is brought in contract for

[3]Pls.' Rule 56.1(a) Statement of Undisputed Material Fact, Ex. D at 20, 33, and 34.

[4]Opinion and Order dated September 23, 2015, Docket entry 80.

property damage to the work or work product of a third person, does any exclusion in the policy bar coverage for this property damage?"[5]

The Arkansas Supreme Court accepted the certified questions, and on April 28, 2016, issued an opinion finding the certified questions moot, holding that there is no coverage for a claim of breach of contract under the policy in question.[6]

Columbia now renews its motion for summary judgment, asserting that breach of contract damages are not "property damage" under a commercial general liability policy and that damages arising from fraud are not caused by, or arise out of, an "occurrence."  Columbia further moves the Court to revise its prior Opinion and Order and find that Columbia does not owe a duty to defend AII and Barron.  In response, AII and Barron argue that Columbia is precluded from contesting coverage because it failed to reserve a coverage defense prior to undertaking a defense of the claim or litigation.  They also contend that the question of whether contract claims are covered under the CGL policy in question was uncertain prior to the Arkansas Supreme Court's ruling and, therefore, Columbia had a duty to defend up to that judicial determination.  Finally, ALI and Barron argue the allegation of fraud should be covered under the Policy.

## Discussion

1.    Application of Waiver and Estoppel

The underlying action, *Collings v. Arkansas Infrastructure*, was filed on June 13, 2012.  On July 9, 2012, Columbia sent the pleadings to an attorney, Jerry Lovelace, asking him to

---

[5]*Id.*, Certification Order dated September 23, 2015, Docket entry 81.

[6]*Per Curiam* Order, filed on June 3, 2016. Docket entry 85.

"defend and protect Arkansas Infrastructure, Inc. and David Barron."[7]  On July 18, 2012,

Columbia sent a letter to AII, to the attention of Barron, which stated: "We have asked this firm

to proceed with your defense in the lawsuit brought against you and your company by (the

Property Owners). . . . This suit seeks damages from you and your company in an unspecified

amount.  It is therefore possible, at least in theory, that damages could be awarded against you

and your company in excess of the dollar limit of the policy under which we are providing your

defense. . . ."[8]  Mr. Lovelace filed an answer on behalf of AII on July 25, 2012,[9] but no answer

was filed on behalf of Barron.  Mr. Barron hired outside counsel to represent him.


The state court action was litigated in 2012 and 2013, and AII and Barron complain that

Columbia never gave them any indication that it was contesting coverage until it filed the lawsuit

before this Court on August 29, 2014.  At that time, discovery was complete and trial was set for

December 9-12, 2014.[10]  Defendants argue that because Columbia undertook AII's defense

without a reservation of rights or non-waiver agreement for an extended period of time,

Columbia waived any future claim of non-coverage.

The general rule in Arkansas is that "'the doctrine of waiver or estoppel cannot be given

the effect of enlarging or extending coverage as defined in the contract.'  Nor may estoppel 'be

asserted to extend coverage under a contract in which it was excluded by specific language.'"  *J-*

---

[7]Statement of Facts (ECF No. 55), Ex. A.

[8]*Id*, Ex. B.

[9]*Id*, Ex. C.

[10]Collings Defs.'Br. in Supp. of Resp. to Mot. Summ. J., Ex. 2.

*McDaniel Const. Co. v. Mid-Continent Cas. Co.*, 761 F.3d 916, 919 (8th Cir. 2014)(citation

omitted).  In *Peoples Protective Life Ins. Co. v. Smith*, 514 S.W.2d 400 (Ark. 1974), the

Arkansas Supreme Court held that the doctrine of waiver or estoppel did not apply where an

insurer paid a claim for medical benefits but later determined that the claim was not covered

under the policy.  The court held:

> The doctrine of waiver or estoppel based upon the conduct or action of the
> insurer, is not available to bring within the coverage of a policy risks not covered
> by its terms, or risks expressly excluded therefrom, and the application of the
> doctrine in this respect is to be distinguished from the waiver of, or estoppel to
> deny, grounds of forfeiture.  That is, conditions going to coverage or scope of the
> policy, as distinguished from those furnishing a ground for forfeiture, may not be
> waived by implication from conduct or action, without an express agreement to
> that effect supported by a new consideration.

514 S.W.2d at 406.  As is *Peoples*, the issue here is one of coverage, not forfeiture.

The cases cited by AII and Barron in support of their argument deal with conditions

giving a ground for forfeiture rather than conditions involving coverage or scope of the policy.

*See, e.g., Service Fire Ins. Co. v. Payne*, 236 S.W.2d 1020 (Ark. 1951)(insurer's knowledge of

circumstances involving insured property sufficient to show insurer waived forfeiture

provisions); *Dixie Auto Ins. Co. v. Goudy*, 382 S.W.2d 380 (Ark. 1964) (insurer waived right to

disclaim liability based on insured's failure to comply with a notice provision); *Connecticut Fire*

*Ins. Co. v. Boydston*, 293 S.W. 730 (Ark. 1927)(insurer waived record warranty provision when

it required insured to make trip at his own expense to be examined under oath).

The fact that Columbia defended the case does not change the terms of the Policy.

Defendants do not cite and the Court is unaware of any Arkansas case holding that an insurer's

defense of its insured without a reservation of rights or non-waiver agreement operates as a

waiver of any future claim of non-coverage.

2.      Fraud

Columbia moves for summary judgment as to the Property Owners's claim of fraud,

arguing that the property damage alleged was not caused by or did not arise out of an

"occurrence" as that term is defined in the Policy.  The allegations pertaining to the Property

Owners's fraud claim are repeated here:

> 27.  . . .  Further, the failure of AII to follow the engineer's plans, specifications
> and drawings in the construction of the project was hidden from observation of
> the plaintiffs or any other person in that such components were covered by the
> foundations, fill dirt and soils on the site.
>
> 28.  In the failure to follow engineer's plans, specifications and drawings in the
> construction of the foundation pad, drainage systems, buttresses and gabion walls,
> knowing that such components would be covered by foundations, fill dirt and
> soils, AII actively attempted to conceal its failure to follow such plans and
> specifications, and committed fraud upon the plaintiffs.[11]

The Policy provides coverage for property damages caused by, or arising out of an

"occurrence."  An "occurrence" is defined in the Policy as an "accident," which the Arkansas

Supreme Court has defined as "an event that takes place without one's foresight or expectation -

an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and

therefore not expected."  *Essex Ins. Co. v. Holder*, 261 S.W.3d 456,460 (Ark. 2007).  In order to

prevail on their claim of fraud, the Property Owners must establish that AII and Barron acted

with intent.  They must prove "(1) a false representation, usually of a material fact; (2)

knowledge or belief by the defendant that the representation is false; (3) intent to induce reliance

on the part of the plaintiff; (4) justifiable reliance by the plaintiff; and (5) resulting damage to the

plaintiff."  *Allen v. Allison*, 155 S.W.3d 682, 693 (Ark. 2004).  Columbia argues the Property

---

[11]*Id.*, ¶¶  26-28.

Owners cannot prove fraud and establish that their property damage resulted from an accident.

AII and Barron argue the allegation of fraud was not made with particularity and it is possible to allege a claim of fraud that does not include an intentional act or conduct.  Clearly, the Property Owners allege intentional conduct.  Whether the claim is labeled fraud or constructive fraud does not matter.  In *Ashley v. Valley Forge Ins. Co.*, 2010 WL 1925839 (E.D.Ark. May 11, 2010), *aff'd* 395 Fed.App'x. 318 (8th Cir. 2010), the insured argued that "constructive fraud . . .  can be deemed 'an event that takes place without one's foresight or expectation' or 'an unusual effect of a known cause, and therefore not expected' because constructive fraud . . . do[es] not have to be the result of actual fraud or dishonesty and can be the result of a mistake."  *Ashley*, 2010 WL 1925839 at *2 (citation omitted).  In finding the insurer had no duty to defend, the district court said:

> The Court does not agree. A necessary element of constructive fraud is a material misrepresentation of fact.  Wrongful possession of another's property is a necessary element of conversion. Whether one wrongly exercises control over another's property or makes a material misrepresentation by mistake, or with malfeasance in his heart, makes little difference as both are intentional acts and neither can be called an accident.
>
> If the factual allegations in the underlying complaint reflect intentional conduct by the insured, the denomination of any of the claims for relief as 'negligence' or 'fraudulent' does not transform the character of the action and thereby create a duty to defend.
>
> . . .
>
> All of the acts complained of in their complaint were intentional acts which is inconsistent with the definition of an 'accident,' and it, therefore, is not an 'occurrence' covered by the policy.

*Id.* at *3.

The Court finds Columbia has no liability for the Property Owners's claim of fraud

9

because they cannot establish the alleged fraudulent acts were an "occurrence" under the Policy.

3.      Duty to Defend

Columbia argues that because the Arkansas Supreme Court determined that a CGL policy does not extend basic coverage for a breach of contract claim and there is no possibility that the fraud claim is covered, the Court should revise its previous Opinion and Order and find that Columbia has no duty to defend AII and Barron.  In response, AII and Barron assert Columbia should be bound by its representations that it would defend them and that Arkansas law did not address the situation here.  In addition, citing *Watkins v. Southern Farm Bureau Cas. Ins. Co.*, 370 S.W.3d 848 (Ark. App. 2009), AII and Barron argue the duty to defend, which is based on the pleadings in the complaint, exists until coverage is ultimately decided, and exists throughout the pendency of the declaratory judgment action.   They also contend that under Ark. Code Ann. § 23-79-209, Columbia is obligated to pay the fees AII and Barron have expended in asserting their positions in this declaratory action.

In finding Columbia had a duty to defend, the Court found there was a possibility that the property damages could be covered by the Policy even though they were alleged in the context of a breach of contract claim.  The Court found no controlling precedent involving faulty workmanship that results in property damage to the work product of a third party or for the proposition that a CGL policy can never extend coverage for a claim of breach of contract.  The Arkansas Supreme Court accepted the certified questions, signifying that there was a possibility of coverage under the Policy.  *See Longview Prod. Co. v. Dubberly*, 99 S.W.3d 427, 429 (Ark. 2003) ("Acceptance of certification is a matter of judicial discretion, and this court will accept certification of a question of Arkansas law only where . . . there are special and important

reasons therefor, including, but not limited to, any of the following: 1. The question of law is one of first impression and is of such substantial public importance as to require a prompt and definitive resolution by this court. 2. The question of law is one with respect to which there are conflicting decisions in other courts.  3. The question of law concerns an unsettled issue of the constitutionality or construction of a statute of this State)."  Under its rules, the Arkansas Supreme Court may rescind its decision to answer a certified question, *see* Arkansas Rules of the Supreme Court, Rule 6-8(a)(5).  The Arkansas Supreme Court did not rescind, but rather than answer the certified questions, the court held that the Policy involved in this case does not provide coverage for the claims asserted by the Property Owners and said the questions were moot.

The Court finds Columbia had a duty to defend AII and Barron based on the allegations of damages from breach of contract. There was a possibility that the damages might fall within the liability coverage of the policy in question, and Columbia actually defended the insureds for two years.

## Conclusion

IT IS THEREFORE ORDERED that Columbia's renewed motion for summary judgment is granted.  Judgment will be entered in favor of Columbia on its action for declaratory judgment.  IT IS FURTHER ORDERED that Columbia's motion to revise previous opinion and order is denied.

DATED this 18th day of November, 2016.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE